## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN HART**, | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO.  10-3675** |
| **TANNERY ET AL.,** | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION

**Tucker, J.**                                                                                    **March\_\_\_, 2011**

Presently before the Court is Defendant Brooke Tannery's Motion to Dismiss Plaintiff's

Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 8); Plaintiff John

Hart's Response in Opposition thereto (Doc. 10); Defendant Christopher Ferry and Hilltown

Township's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 7) and

Plaintiff's Response in Opposition thereto (Doc. 11).  For the reasons set forth below, upon careful

consideration of the parties submissions and exhibits thereto, the Court will Grant the Motions.

**I.**                                        **PROCEDURAL HISTORY**

This action arises out of circumstances surrounding Plaintiff's previous arrest and

incarceration in 2008.[1]  The arrest appears to have been based upon allegations of harassment made

by Defendant Brooke Tannery ("Tannery").  Pro Se Plaintiff, John Hart ("Hart") filed a Complaint

against Defendants Tannery, Police Officer, Christopher Ferry ("Ferry"), and the Hilltown Township

---

[1] Plaintiff fails to include any factual detail regarding his previous arrest, including the date of his arrest and the nature of the underlying charges.  Moreover, Plaintiff has had the criminal records associated with the arrest expunged.  <u>See</u> (Pl.'s Resp. in Opp'n to Def. Tannery's Mot. to Dismiss 8) (stating that Plaintiff is unable to obtain copied of the transcripts from both the preliminary hearing and the Bucks County Court of Common Pleas as a result of the expungement).

("Township") on July 27, 2010 asserting various claims under both Federal and State law. (Doc.1). The following day, July 28, 2010, Plaintiff filed an Amended Complaint. (Doc. 2). In response, Defendants Ferry and Township jointly filed a Motion to Dismiss Plaintiff's Amended Complaint on December 14, 2010. Defendant Tannery also filed a Motion to Dismiss Plaintiff's Amended Complaint or in the alternative a Motion For a More Definitive Statement Pursuant to Federal Rule of Civil Procedure 12 (e). On January 31, 2011, Plaintiff filed Answers to Defendants' respective motions.

II.                    **FACTUAL BACKGROUND**

On or around September of 2007, Plaintiff and Defendant Tannery met on MySpace, a popular social networking website. Tr. Hr'g on Prot. From Abuse 8: 8-15, Aug. 20, 2008; (Def.'s Mem. In Supp. of Mot. To Dismiss 8). Two months later, in November of 2007, Plaintiff and Defendant Tannery met in person at a local establishment in Philadelphia, Pennsylvania. (Am. Compl. ¶ 7.) A relationship later ensured. According to Tannery, the entire relationship between the two consisted of approximately five face to face meetings, following two months of communicating via MySpace and email. Tr. Hr'g on Prot. From Abuse 8: 22-25, 9: 1. (Def.'s Mem. In Supp. of Mot. To Dismiss 2). In January of 2008, the relationship between Defendant Tannery and Plaintiff became strained and was subsequently terminated. (Am. Compl. ¶ 8.) The Complaint lacks any factual detail with regards to the break-up; nonetheless, Plaintiff avers that Defendant Tannery was emotionally strained over the break-up and intended to cause Plaintiff financial and emotional problems. (Am. Compl. ¶ 9.)

Providing some light on the reason for the termination of the relationship, Defendant Tannery noted that the relationship soured because of Plaintiff's excessive text messages and rude insistent demeanor. Tr. Hr'g on Prot. From Abuse 9: 18-25; (Def.'s Mem. in Supp. of Mot. to

Dismiss 2).  Specifically, during a hearing for a Protection From Abuse Order, Defendant testified as

follows:

> Q:    Okay, you're talking about text messages.  What exactly does that mean?
> A:    He would send me message[s] through his phone to my cell phone. From cell phone to cell phone.
> Q:    And that started to happened when?
> A:    They started getting kind of rude in December.
> Q:    Of 2007?
> A:    2007.
> Q:    And at some point did you decide that you were going to end things with him, or what did you decide to do?
> A:    Yeah I told him that I just needed to cool things off.
> Q:    When did that happen?
> A:    Probably in January 2008.
> Q:    And how–what did you tell him?
> A:    I just told him it was too much. He was – he understood that.  And he need to– that he was calling too much and texting too much and that he was starting to scare me.  I told him a couple times he was staring to scare me because he was–
> Q:    Why dis he scare you?
> A:    He was calling me names and texting too often.
> Q:    When you say "too often," what do you mean by that?
> A:    Like if I – there was one Friday in particular he texted like ten times about where I was and what I was doing.  I told him I was at work.  You know, just kind of harassing, I guess.

Tr. Hr'g on Prot. From Abuse 10: 3-25; 11: 1-10.

Defendant Tannery further averred that Plaintiff's aggressive behavior ultimately led to

intimidation tactics and threats when she declined Plaintiff's invitation to accompany him to a work

related function.  Tr. Hr'g on Prot. From Abuse 11: 11-19.  See also (Def.'s Mem. in Supp. of Mot.

to Dismiss 3).  Upon Defendant Tannery's refusal to attend the event, Plaintiff requested that she

return a gift he had previously given her. Tr. Hr'g on Prot. From Abuse 12: 3-18.   Defendant

Tannery met Plaintiff on January 16, 2007 to return the gift, a Burberry purse, and it was during this

encounter that she avers Plaintiff proceeded to intimidate and threaten her. Tr. Hr'g on Prot. From

Abuse 12: 1-10.  See also (Def's Mem. in Supp. of Mot. to Dismiss 3).  In attempt to end the meeting

Defendant Tannery avers that she agreed to attend the event, but later informed Plaintiff via email

that she wanted him to cease communicating with her altogether. (Def.'s Mem. in Supp. of Mot. to Dismiss 3). According to Defendant Tannery, Plaintiff subsequently began harassing her by engaging in a series of actions, including, repeated calling, text messages and emails designed to frustrate and intimidate her. In fact, between January 15, 2008 and January 18, 2008, Plaintiff called Defendant Tannery a total of thirty-five (35) times. Tr. Hr'g on Prot. From Abuse 83: 1-10.

Shortly after the break up, on January 18, 2008, Defendant Tannery attempted to file a criminal complaint against Plaintiff in Philadelphia County. (Am. Compl. ¶ 10.) Plaintiff avers that the complaint was based on "false and malicious facts". (Am. Compl. ¶11.) The Philadelphia Police Department denied Defendant Tannery's request to file a complaint. (Am. Compl. ¶ 12.) According to Plaintiff, on January 22, 2008, Defendant Tannery again attempted to file a complaint against Plaintiff with the Philadelphia District Attorney's Office, and this request was denied as well. (Am. Compl. ¶ 13.)

On or around January, 22, 2001, Defendant Tannery filed a criminal complaint against Plaintiff at the Hilltown Township Police Department in Bucks County, Pennsylvania. (Am. Compl. ¶ 14.) The complaint was filed with Defendant Ferry, a Hilltown Township Police Officer. Plaintiff avers that in an email to him, from Defendant Tannery dated January 26, 2008, she stated that she believed it would be easier to file charges against Plaintiff in Bucks County than it had been in Philadelphia County. (Am. Compl. ¶ 14.) After filing the complaint against Plaintiff, Defendant Tannery learned from Defendant Ferry that Plaintiff had a prior criminal history. Tr. Hr'g on Prot. From Abuse 42:17-18. Specifically, Defendant Tannery testified that she was told that Plaintiff had two or three protection from abuse orders entered against him in the past. Tr. Hr'g on Prot. From Abuse 42: 15, 43: 1-13. While at the Hilltown Police Department, Defendant Ferry advised Tannery of the possibility of filing for a Protection From Abuse Order ("PFA"). Tr. Hr'g on Prot. From

Abuse 78: 19-24.

After speaking with Defendant Tannery, Defendant Ferry spoke with Plaintiff by telephone concerning the allegations made against him. (Am. Compl. ¶ 15.) Plaintiff denied Defendant Tannery's allegations and informed Defendant Ferry that Tannery had unsuccessfully attempted to file the same charges twice in Philadelphia County. (Am. Compl. ¶ 16.) During the course of the conversation, Plaintiff alleges that Defendant Ferry began to ask him personal questions which, according to Plaintiff, were unrelated to the investigation. (Am. Compl. ¶ 17.) When Plaintiff declined to answer these questions, Defendant Ferry allegedly became agitated and frustrated and told Plaintiff he would obtain his telephone records to prove that Plaintiff had lied. (Am. Compl. ¶ 17.) Ten minutes later, Plaintiff alleges, that officer Bell, another officer from the Hilltown Township Police Department called Plaintiff and asked him the same personal questions Plaintiff had declined to answer earlier. (Am. Compl. ¶ 18.) Plaintiff again did not answer these questions and the call was terminated. (Am. Compl. ¶ 18.)

Defendant Ferry subsequently subpoenaed and obtained Plaintiff's telephone records. (Am. Compl. ¶ 19.) Plaintiff alleges that Defendant Ferry deliberately and maliciously failed to subpoena Defendant Tannery's phone records, which would have negated the allegations she made in her criminal complaint and divested Hilltown Township Police Department of jurisdiction in this matter. (Am. Compl. ¶ 20.) Plaintiff avers that Defendant Ferry coached Defendant Tannery as to what allegations to make in her complaint and encouraged her to file and pursue the matter. (Am. Compl. ¶ 49.) Defendant Ferry issued a criminal complaint against Plaintiff, which Plaintiff avers was in retaliation for Plaintiff asserting his constitutional rights when questioned by the police officers of Hilltown Township. (Am. Compl. ¶ 21-22.)

Ultimately, Plaintiff was arrested and incarcerated for over three (3) months and placed on

electronic home monitoring for over two (2) months. (Am. Compl. ¶ 55.) Again, the Court must make note that Plaintiff fails to provide any factual detail concerning the underlying criminal charges or proceedings. On July 28, 2008, the Bucks County Court of Common Pleas dismissed all charges against Plaintiff. (Am. Compl. ¶ 24.) See also Tr. Hr'g on Prot. From Abuse 94: 6-22.

In August 2008, after the conclusion of the criminal case, Plaintiff avers that in retaliation for his exoneration, Defendants Tannery and Ferry deliberately and maliciously misrepresented his conduct to third parties, including, inter alia, the Bucks County Court of Common Pleas. (Am. Compl. ¶¶ 60, 62.) The misrepresentations include, inter alia, the number of times Plaintiff contacted and attempted to contact Defendant Tannery, her family, and her friends after the relationship ended, the series of events which occurred between Plaintiff and Defendant Tannery on January 16, 2008, and the claim that Plaintiff contacted Defendant Tannery's cell phone provider and impersonated one of her family members in order to delete messages from her voice mail. (Am. Compl. ¶ 61.)

After all criminal charges against Plaintiff were dropped, Plaintiff filed a Complaint in this Court on July 28, 2010 pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff's Amended Complaint filed one day later, asserts the following claims. Count I of Plaintiff's Amended Complaint against Defendants Ferry and Township, brought under 42 U.S.C.§ 1983 alleges violations of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Count II of Plaintiff's Amended Complaint charges Defendants Tannery and Ferry with malicious prosecution. Count III of Plaintiff's Amended Complaint charges Defendants Tannery and Ferry with abuse of process. Count IV charges Defendants Tannery and Ferry with false arrest/ false incarceration. Last, Count V charges Defendants Tannery and Ferry with negligent misrepresentation.

**III.**                                    **LEGAL STANDARD**

**A**.     **Motion to Dismiss Pursuant to Federal Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007).  In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6)

motion to dismiss in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). In <u>Iqbal</u> the Court made clear

that "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements [are] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. <u>Id</u>. at 1949. "[O]nly a

complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." <u>Id</u>. at 1950.

In light of the decision in <u>Iqbal,</u> the Third Circuit set forth a two-part analysis to be applied

by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal

elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the

legal conclusions disregarded. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).

Second, the court must determine whether the facts alleged in the complaint demonstrate that the

plaintiff has a "plausible claim for relief." <u>Id</u>. at 211. If the court can only infer the mere possibility

of misconduct, the complaint must be dismissed because it has alleged -- but has failed to show --

that the pleader is entitled to relief. <u>Id</u>.

## IV.                                    DISCUSSION

### 1. <u>Statute of Limitations Defense</u>

Defendants Ferry and Township ask this Court to dismiss Counts I, III, IV and V of

Plaintiff's Amended Complaint on the basis that they are time barred. From the outset, Defendants

Ferry and Township note that Plaintiff has failed to disclose the date of his arrest,  however

Defendants argue that "it is clear by implication that [the] events occurred sometime in late January

or early February, 2008 since the matter would not have made it to he Court of Common Pleas of

Bucks County for dismissal on July 28, 2008 unless the charges had been filed at least several

months earlier." (Def.'s Mem in Support of Mot. Dismiss 3). When a defendant raises a statute of

limitations defense on a motion to dismiss pursuant to Rule 12(b)(6), a court may grant the motion

only if the defense "clearly appears on the face of the pleading." <u>Oshiver v. Levin, Fishbein, Sedran</u>

& Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

The claims referred to by the moving Defendants are as follows; one Section 1983 claim, one claim for abuse of process, one claim for false arrest/ false incarceration and one claim for negligent misrepresentation.  Turning first to statute of limitations applicable to § 1983 claims, the Supreme Court has held that the state statute of limitations for personal injury actions applies to section 1983 claims.  See Wilson v. Garcia, 471 U.S. 261, 269, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985)  The statute of limitations for a personal injury action in Pennsylvania is two years, accordingly, the same limitations period applies to §1983 actions.  See Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003); Bartholomew v. Fischl, 782 F.2d 1148, 1155 (3d Cir. 1986); Knoll v. Springfield Township School District, 763 F.2d 584, 585 (3d Cir. 1985).  Defendants also argue that Plaintiff's state law claims for false arrest, abuse of process and negligent misrepresentation are also time barred.  Under 42 Pa.C.S. § 5524(1)-(2)and (7) the applicable statute of limitations for false arrest, malicious abuse of process and negligent misrepresentation is two years.  See also  Marrero v. City of Phila., 1997 U.S. Dist. LEXIS 11263, 1997 WL 438828, at *1 (E.D. Pa. July 29, 1997).

In the present case, Plaintiff filed his Complaint on July 27, 2010, and an Amended Complaint one day later on July 28, 2010.  (Docs.1-2)  The Amended Complaint contains allegations concerning conduct by Defendants that may have occurred on or about late January or early February of 2008.  Under Pennsylvania law, the limitations period begins to run from the time the plaintiff suffers the injury or has reason to know of the injury.  Morgan v. Johns-Manville Corp., 354 Pa. Super. 58, 61-62, 511 A.2d 184, 186 (1986). Federal law, however, governs the date of accrual for claims brought under § 1983. Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). Nonetheless, under federal law, much like in Pennsylvania, generally, "the limitations period begins

to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. "Id.

Here, Defendants Ferry and Township contend that the statute of limitations on Counts I and Counts III through V of Plaintiff's Complaint accrued on the date of his arrest, since Plaintiff knew at that time that he was innocent of the charges brought against him and, thus, knew of his injuries. See De Simone, 159 F.3d at 126; Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989). Although Plaintiff fails to disclose the date of his arrest, he concedes that "Count IV of Plaintiff's Amended Complaint should be dismissed with prejudice," as he was wrongfully detained in March of 2008." (Pl's Resp. in Opp'n 11.) However, Plaintiff goes on to argue that the date of accrual is governed by the "discovery rule." In Pennsylvania, the discovery rule provides that the statute of limitations does not begin to run until "the injured party 'knows, or in the exercise of reasonable diligence should have known, (1) that he has been injured, and (2) that his injury has been caused by another's conduct.'" Gleeson v. Prevoznik, No. 06-4969, 2007 WL 3307211, at * 4 (3d Cir. 2007) (citing Haines v. Jones, 830 A.2d 579, 585 (Pa. Super. 2003)). "Thus, the 'polestar' of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d at 1386 (citing Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991)). In making this argument, Plaintiff cites to the Third Circuit's opinion in Hughes v. United States, 267 F. 3d 272 (3d. Cir 2001).

Plaintiff's reliance on Hughes is misplaced. Hughes involved an action for medical malpractice. There, the plaintiff, Raymond Hughes, was hospitalized in a Veterans Administration Hospital for a coronary bypass surgery, during the hospitalization he was given, heparin, a blood thinner, in preparation for the surgery. Id. at 274. It was later discovered that the Hughes was allergic to heparin. The allergic reaction resulted in gangrene, which ultimately necessitated the

amputation of both of his hands and legs. Id. "Hughes was heavily sedated and unconscious from

April 17 to June 4, 1997." Id. When Hughes awoke from the coma, he discovered the amputation

and was informed that an allergic reaction to the heparin had caused the gangrene which lead to the

amputations. Id. However, plaintiff in Hughes was not informed that if the physicians had timely

diagnosed and properly treated the complication, his amputations would have been avoided. Id.

Plaintiff in Hughes then brought an action against the United States pursuant to the Federal Tort

Claims Act ("FTCA"), 38 U.S.C. § 1346. Thereafter, the government moved to dismiss plaintiff's on

the basis that it was time barred under the FTCA. Id. The government argued that plaintiff's cause

of action arose when he emerged from a coma, to find out his limbs had been amputated because of

an allergic reaction to heparin. Id. at 275. Hughes argued that the statute of limitations was tolled

until he became aware of the act or omission which caused the injury. Id. The Third Circuit agreed

and vacated the District Court's grant of the motion to dismiss and vacated the action reasoning that

Hughes was not provided any information that should have led him to believe that it was the failure

to treat timely the allergic reaction to the heparin that caused the formation of gangrene. Id.

Specifically, the Third Circuit held that "[i]n a medical malpractice action under the FTCA, the

statute of limitations is tolled until the putative plaintiff possesses facts which would enable "a

reasonable person to discover the alleged malpractice." Id. (citing Barren by Barren v. United States,

839 F.2d 987, 991 (3d Cir. 1988)).

The facts of the instant action are wholly distinct from that in Hughes. Here, Plaintiff was

arrested and charged with what appears to be harassment. At the moment of his arrest, Plaintiff had

full knowledge of the alleged unlawfulness of his detainment. Plaintiff however, avers that it was

not until July 28, 2008, that he learned through his counsel that Defendant Ferry allegedly failed to

subpoena Defendant Tannery's cell phone records. (Pl.'s Resp. in Opp'n 8.) Plaintiff avers that

these records would have substantiated and corroborated the information he provided to Defendant Ferry. Moreover, Plaintiff states that he learned for the first time, on August 20, 2008, that Defendant Ferry allegedly failed to turn over all of the information contained within his investigate file. (Pl.'s Resp. in Opp'n 8) According to Plaintiff, it was at this moment that his cause of action accrued, as this is when he discovered the facts giving rise to the claims asserted against the Defendants. The Court disagrees. Plaintiff's averments are insufficient to invoke the discovery rule. The application of the discovery rule depends on a plaintiff's knowledge of *actual injury*, not on his or her knowledge of legal injury. Podobnik v. United States Postal Serv., 409 F.3d 584, 590 (3d Cir. 2005) (emphasis added).

Here, the means of discovery were within Plaintiff's power and it was the responsibility of Plaintiff, not Defendants, to protect Plaintiff's interests. Based on Plaintiff's own submissions to Court, the alleged illegality of Plaintiff's arrest was clear at the moment of his arrest. That Defendant Ferry later allegedly failed to subpoena Defendant Tannery's phone records and turn over exculpatory evidence is of no consequence. The precise legal nature of the cause of the injury is not the appropriate inquiry but rather when the "plaintiff either [became] aware, or should [have been] aware after a sufficient degree of diligence, of the existence and source of an actual injury." Podobnik, 409 F.3d at 590-591. The Court cannot say that this case presents a circumstance where Plaintiff knew that he was injured but was not sufficiently apprised by the mere fact of injury to understand its cause.

Because Plaintiff was arrested on or around February of 2008, Defendants argue that the statute of limitations expired on or around February of 2010, and Plaintiff's claims, which were not filed until July 27, 2010, are therefore untimely. The Court agrees. See Marrero, 1997 U.S. Dist. LEXIS 11263, 1997 WL 438828, at *1 (E.D. Pa. July 29, 1997) ("Plaintiff's state law claims such as

negligence, false imprisonment [and] abuse of process ... are also subject to the two year statute of limitations period, likewise beginning at the time of the arrest.").   Even under the most liberal construction of the factual allegations in the Amended Complaint, the Court finds that the claims presented in Counts I and Counts III through V of Plaintiff's are time barred.  Plaintiff himself concedes that he was detained in March of 2008.  Assuming arguendo, that Plaintiff was arrested in March of 2008, to avoid being barred by the statute of limitations, Plaintiff would have had to commence this action no later than March of 2010.[2]  Plaintiff did not, however, commence this action until July 27, 2010, well beyond the two-year statute of limitations period. Accordingly, the Court will grant Defendant Ferry and Township's Motion to Dismiss Counts I and Counts III through V of Plaintiff's Complaint on the grounds that the claims are time barred.

The Court will now turn to the other arguments raised by Defendants.

2. Failure to Satisfy Fed. R. Civ. P. 12(b)(6)

    A.    Violation of 42 U.S.C. § 1983

Count I of Plaintiff's Complaint asserts a Monell v. New York City Dept. of Social Servs., 436 U.S. 658,(1978) claim against Defendant Township alleging that the City's failure to train, supervise and discipline its employees resulted in the violation of his constitutional rights under the First, Second, Fourth and Fourteenth Amendments. In support of this allegation, Plaintiff states that Defendant Township "failed to adequately train its employees in how to conduct an investigation prior to issuing an arrest warrant, and failed to supervise its employees in conducting this investigation with deliberate indifference to the consequences of its action." (Am. Compl. ¶ 27.)

---

[2] Defendants Ferry and Township point out that Plaintiff notes that he was incarcerated for a period of three months which was followed by two months of electronic home monitoring.  See (Am. Compl. ¶ 55.)  Thus, by Plaintiff's own admission, this would establish that Plaintiff's arrest occurred a minimum of five months before July 28, 2008, the date the charges against plaintiff were dismissed by the Bucks County Court of Common Pleas.

Further, Plaintiff boldly states that "Defendant Hilltown Township has a custom, policy and practice of failing to properly train and supervise its employees as to how to conduct an investigation ... and failed to have a policy, protocol, or practice to prevent individuals from being arrested and incarcerated based upon false allegations and without being afforded procedural safeguards required by the United States Constitution and the Pennsylvania Constitution." (Am. Compl. ¶ 28.) The sole factual averment made by Plaintiff with regards to Count I is that Defendant Ferry deliberately and maliciously ignored exculpatory evidence which allegedly exonerated Plaintiff prior to issuing the arrest warrant and intentionally failed to disclose evidence he obtained during his investigation. (Am. Compl. ¶ 29.) Plaintiff maintains that the aforementioned acts resulted in the violation of his constitutional rights under the First, Second, Fourth and Fourteenth Amendment to the United States, Article I § 8 and Article I § 9 of the Constitution of the Commonwealth of Pennsylvavnia. (Am. Compl. ¶ 33.)

Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, [*15] or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive

right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. <u>Baker v McCollan</u>, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

The Court notes from the outset that complaints brought pursuant to § 1983 are held to a more stringent standard of factual specificity than are the usual notice pleadings in federal court. <u>See</u> <u>Darr v. Wolfe</u>, 767 F.2d 79, 80 (3d Cir. 1985); <u>Ross v. Meagan</u>, 638 F.2d 646, 650 (3d Cir. 1981). The heighten standard is applied in order "to weed out the frivolous and insubstantial case at an early stage in the litigation and still "keep the doors of the federal courts open to legitimate claims.'" <u>Brewer v. Villanova</u>, 1991 U.S. Dist. LEXIS 18292 *5 (E.D. Pa. 1991) (quoting <u>Rotolo v. Borough of Charleroi</u>, 532 F.2d 920, 922 (3d Cir. 1976)).

To prevail on a <u>Monell</u> claim, a plaintiff must establish that: (1) the municipality had a "policy" or "custom" that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. <u>Pelzer v. City of Philadelphia</u>, 656 F.Supp.2d 517, 531 (E.D. Pa. 2009) (citations omitted). Section 1983 liability may not be imposed solely on a respondeat superior theory. <u>Monell</u>, 436 U.S. at 692. The plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation. <u>Watson v. Abington Twp</u>., 478 F.3d 144, 155-156 (3d Cir. 2007). Defendant argues that Plaintiff has not established that the alleged violations were a result of a "custom" or "policy" within the meaning of Section 1983. The Court agrees.

Plaintiff has produced no evidence that the conduct of which he describes (i.e. Defendant Ferry's refusal to subpoena exculpatory evidence which allegedly exonerated Plaintiff prior to issuing the arrest warrant and intentionally failing to disclose evidence he obtained during his

investigation during the discovery) was the custom or policy of the Hilltown Township. In fact, in the twelve page Complaint, a policy or custom of Hilltown Township is never mentioned except in stating the cause of action. A declaration that Defendants' actions rose to the level of an official policy or custom is insufficient to support liability under § 1983. Thus, Plaintiff's bald statement that Defendant Township was the "moving force" behind the alleged violation of his constitutional rights, without more, is of no consequence. Any claim against Defendant Township is based on the theory of respondeat superior. Local governmental units are not subject to liability under § 1983 solely on a theory of respondeat superior. See Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Accordingly, the claims asserted against Defendant Hilltown Township will be dismissed with prejudice.[3] Moreover, Plaintiff has failed to plead sufficient facts establishing that Defendant Ferry violated his constitutional rights. The averments made by Plaintiff are insufficient to establish a violation of his rights under the First, Fourth, Fifth or the Fourteenth Amendments to the United States Constitution nor under Article I § 8 and Article I § 9 of the Constitution of the Commonwealth of Pennsylavnia.

**B.    Malicious Prosecution**

In Count II, Plaintiff asserts common law claims of malicious prosecution against Defendants

---

[3]The Court also notes that "liability under § 1983 pursuant to Monell is not attributable to a municipality in the absence of a finding that a municipal employee has caused a constitutional injury to a plaintiff. McGowan v. Borough of Econ., 2008 U.S. Dist. LEXIS 17004 (W.D. Pa. 2008)(citing Williams v. Borough of West Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989)).

Ferry and Township. Defendant Tannery asks the Court to dismiss this claim pursuant to Fed. R. Civ. P. 12 (b) (6). To prevail on a malicious prosecution claim under Pennsylvania law, a plaintiff must prove that the defendant (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003) (citing Turano v. Hunt, 158 Pa. Commw. 348, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993)). "[A]llegations of malicious prosecution invoke Pennsylvania's statutory law in the form of the wrongful use of civil proceedings statute, § 42 Pa.C.S.A. 8351-8355. . . .Wrongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." Werner v. Plater-Zyberk, 2002 PA Super 42, P16 (Pa. Super. Ct. 2002)

Defendant has failed to allege sufficient facts to establish the second and third prongs of the test. As with false arrest, the existence of probable cause is an absolute defense to a malicious prosecution claim brought either under § 1983 or pursuant to Pennsylvania law. "Probable cause for purposes of malicious prosecution actions has been defined as: 'reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense.'" Napier v. City of New Castle, 2010 U.S. App. LEXIS 22353 *10 (3d Cir. 2010) (citing Thomas v. E.J. Korvette, Inc., 476 F.2d 471, 474 (3d Cir. 1973) Probable cause is determined by the facts and circumstances within the officer's knowledge at the time of the arrest. Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt," but it does require "more than mere suspicion." Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). The incident leading up to and including the arrest is set forth in the Complaint in paragraphs 14-19 and 38-42. Defendant Tannery moves to dismiss the malicious prosecution claim arguing that Plaintiff's own allegations show there was

probable cause to arrest Plaintiff. The Court agrees.

A review of Plaintiff's Amended Complaint demonstrates that Defendant Tannery went to the Hilltown Township Police Station and filed a complaint against Plaintiff. (Am. Compl. ¶ 14.) It further notes that two police officers spoke to Plaintiff and asked him questions with regards to the allegations made by Defendant Tannery. (Am. Compl. ¶¶ 15-18.) Moreover, prior to Plaintiff's arrest, Defendant Ferry conducted a background search of Plaintiff's criminal history and subpoenaed his telephone records to determine the veracity of Tannery's allegations. (Am. Compl. ¶ 19.)

In opposition, Plaintiff maintains that the allegations demonstrate a lack of probable cause, however, Plaintiff fails to discuss what particular averments support his assertion. Plaintiff merely states that Defendant Tannery's argument is faulty but makes no effort to point to any paragraph within his Complaint that substantiates his assertion that there was a lack of probable cause. In sum, because Plaintiff has failed to plead sufficient facts that would establish that the proceedings lacked probable cause when initiated, thus, he cannot maintain a claim for malicious prosecution. <u>Amato v. Pa. Office of Attorney Gen.</u>, 183 F. App'x 260, 262 n.1 (3d Cir. 2006) (noting "if probable cause is established, a malicious prosecution claim fails as a matter of law.") Accordingly, Defendant Tannery's motion to dismiss pursuant to 12(b)(6) will be granted with respect to Plaintiff's malicious prosecution claim.

C.    **Abuse of Process**

Count III of Plaintiff's Complaint alleges a claim of abuse of process. In support of this allegation, Plaintiff states that "the misuse of the legal process occurred when Defendant Tannery went to another jurisdiction and presented information to the issuing authorities she knew to be false in order to have criminal charges brought against Plaintiff. . . ." (Pl.'s Resp. in Opp'n 10). Plaintiff

also asserts that Defendant Ferry's initiation of the criminal action against him knowing that Tannery attempted to file a complaint against Plaintiff twice amounts to an abuse of process. <u>See</u> (Am. Compl. ¶ 48.) Further, Plaintiff avers that Defendant Ferry coached Tannery as to what allegations to include in her complaint. (Am. Compl. ¶ 49.) To establish a claim of abuse of process under Pennsylvania law, Plaintiff must show that Defendants "(1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." <u>Harris v. Brill</u>, 2004 PA Super 24, 844 A.2d 567, 572 (Pa. Super. Ct. 2004). "[I]n essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. <u>Werner,</u> 2002 PA Super 42, P15 (Pa. Super. Ct. 2002).

The crux of Plaintiff's argument is that Defendant Tannery engaged in an abuse of process by "forum shopp[ing] her complaint against Plaintiff in a calculated attempt to pick the jurisdiction most likely to assist in achieving her goal of having Plaintiff arrested and incarcerated. . . ." (Pl.'s Resp. in Opp'n 9 ) <u>See also</u> (Am. Compl. ¶ 46.). The Court rejects this argument and will dismiss the abuse of process claim. That Defendant Tannery was initially unsuccessful in filing a complaint against Plaintiff in Philadelphia County and proceeded to file one in Bucks County does not amount to an abuse of process. Moreover, Defendant Ferry's actions do not amount to an abuse of process. Here, Defendants Tannery and Ferry obtained a result that is the legitimate object of the process, an arrest warrant and prosecution. Any assertion that either Defendant Tannery or Ferry had a bad motive in doing so is irrelevant. <u>See</u> <u>Lerner v. Lerner</u>, 2008 PA Super 183, 954 A.2d 1229, 1238 (Pa. Super. 2008) "'[T]here is no action for abuse of process when the process is used for the purpose for which it is intended. . . ." <u>Napier</u>, 2010 U.S. App. Lexis 22353 *7 (quoting <u>Rosen v. Am. Bank of Rolla</u>, 426 Pa. Super. 376, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) <u>See also</u> <u>Lerner,</u> 954 A.2d at 1238 ("there is no liability where the defendant has done nothing more than carry out the process to

its authorized conclusion, even though with bad intentions") (citations omitted). Plaintiff has failed to plead sufficient facts that would establish that there was an abuse of process. Accordingly, Defendants' motion to dismiss will be granted with respect to Plaintiff's abuse of process claim.

**D.     False Arrest/False Imprisonment**

Defendants next argue that Plaintiffs fail to state a claim for false arrest/ false imprisonment under Pennsylvania law. There are two elements to a claim of false imprisonment under Pennsylvania law: "(1) the detention of another person, and (2) the unlawfulness of such detention." Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994). When detention is in the form of an arrest, to show the unlawfulness of that detention, Plaintiff must show "that the process used for the arrest was void on its face or that the issuing tribunal was without jurisdiction; it is not sufficient that the charges were unjustified." Strickland v. Univ. of Scranton, 700 A.2d 979, 984-85 (Pa. Super. 1997). Here, Plaintiff has not plead sufficient facts to establish that the process itself was void on its face nor that the issuing tribunal was without jurisdiction. "To establish that an arrest warrant was invalid, [Plaintiff] must show: (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." Wagner v. Waitlevertch, 2001 PA Super 100, P20 (Pa. Super. Ct. 2001). Here, Plaintiff has not sufficiently plead either. Although plaintiff avers that Defendant Tannery made false statements to the Defendant Ferry, he does not specify what these statements are.  See (Am. Compl. ¶53.) Moreover, Plaintiff fails to plead that these alleged false statements were necessary to the finding of probable cause.

A finding that Plaintiff was arrested without probable cause, would necessarily suggest the invalidity of a claim for false arrest. See generally Wagner, 2001 PA Super 100. As with Plaintiff's claim for malicious prosecution, the instant cause of action turns on whether or not there was

sufficient probable cause to arrest Plaintiff. No where in the complaint has Plaintiff demonstrated that Officer Ferry lacked probable cause to arrest Plaintiff. In fact, in Plaintiff's own complaint enough facts are set forth to prove that Defendant Ferry had probable cause to believe that the elements of the offense existed. (See Am. Compl.¶¶ 14-19) The Court has previously found that the moving Defendants had sufficient probable cause to arrest Plaintiff. Therefore, for the same reasons stated above, the Court will dismiss Plaintiff's claim of false arrest/false imprisonment.

## V.                                 CONCLUSION

For the foregoing reasons the Court will dismiss all counts of Plaintiff's Complaint. Counts I, III, and IV are time barred and also fail to satisfy the pleading requirements of Fed. R. Civ. P. 12 (b)(6). Count V of Plaintiff's Complaint is also time barred. Additionally, Count II, Plaintiff's state law claim for malicious prosecution, is dismissed with prejudice on the grounds that Plaintiff fails to satisfy the pleading requirements of Fed. R. Civ. P. 12 (b)(6).[4]

An appropriate order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
**_____**
**Hon. Petrese B. Tucker, U.S.D.J.**

---

[4] Any further amendment of the Complaint will be futile as the Court has already determined that there was sufficient probable cause to arrest Plaintiff.